CITY OF ASHLAND, A NEBRASKA MUNICIPAL CORPORATION, APPELLEE, V. ASHLAND SALVAGE, INC., A NEBRASKA CORPORATION, AND ARLO REMMEN, APPELLANTS.

711 N.W.2d 861

Filed April 7, 2006.    No. S-04-1365.

Terry K. Barber for appellants.

Glen Th. Parks and Mark A. Fahleson, of Rembolt Ludtke, L.L.P., for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
## NATURE OF CASE
Plaintiff-appellee, the City of Ashland, Nebraska, brought this declaratory judgment action in the district court for Saunders County against defendants-appellants, Ashland Salvage, Inc., and Arlo Remmen, seeking a declaration as to the existence and lawful boundaries of certain public rights-of-way claimed by the city and further seeking an injunction against appellants' improper use of the public rights-of-way. Following a bench trial, the district court ruled in favor of the city, declaring the boundaries with regard to appellants' property and the city's public rights-of-way and enjoining appellants from any inappropriate use of the rights-of-way. We affirm.

## STATEMENT OF FACTS
This case involves the city's claim to two public rights-of-way (sometimes hereinafter referred to as "the disputed property") originally dedicated to the city in 1871. The disputed property forms a backward "L" and borders on the southern and eastern boundaries of a salvage yard operated by Ashland Salvage. The salvage yard is located south of U.S. Highway 6 in Ashland. Remmen is the president and sole shareholder of Ashland Salvage. The record reflects that in 1994, Remmen purchased the property that forms the southeast corner of the salvage yard

and, by a quitclaim deed dated October 5, 1994, transferred the property to Ashland Salvage.

At issue in this case are the existence and boundaries of two rights-of-way claimed by the city. The first right-of-way runs in an east-west direction along Fir Street (formerly known as Prairie Street) as it runs along the southern edge of the salvage yard, and the second right-of-way runs in a north-south direction along 9th Street, or Dennis Dean Road (formerly known as Cherry Street), as it runs along the eastern edge of the salvage yard. These claimed rights-of-way intersect at the southeast corner of the salvage yard to form a backward "L." Appellants dispute the existence of these rights-of-way and assert an ownership interest over the disputed property.

In May 2002, the city notified appellants that materials belonging to the salvage yard were being stored on portions of the Fir Street and Dennis Dean Road public rights-of-way. The city requested that appellants remove these materials. At some point, the city removed materials from the disputed property. Thereafter, the city imposed a special assessment against appellants for the cleanup costs.

In 2002, appellants filed suit in the district court for Saunders County against the city, challenging the special assessment. On July 25, 2003, the city filed in the district court a declaratory judgment action against appellants, seeking a declaratory judgment with regard to the existence and the boundaries of the Fir Street and Dennis Dean Road public rights-of-way as they abutted the southeast corner of appellants' property and requesting, in effect, an injunction enjoining appellants' storage of materials on the disputed property. Prior to trial, the district court consolidated the city's declaratory judgment action with appellants' action challenging the city's special assessment.

As part of the pretrial proceedings, the city served its "First Set of Requests for Admissions" upon appellants, which requests sought appellants' admissions or denials with regard to the boundaries for the southeast corner of appellants' salvage yard property and the Fir Street and Dennis Dean Road rights-of-way. Specifically, attached to the requests for admissions was a copy of a 2003 survey ordered by the city, which survey included the boundaries of the southeast corner of the salvage yard. The

survey identified the borders of the Fir Street and Dennis Dean Road public rights-of-way as they met to form the backward "L" abutting the southeast corner of appellants' property. Moreover, the survey identified certain markers that established the original boundaries of the city's claimed public rights-of-way, including a pipe, marking the northwest corner of the intersection between Fir Street and Dennis Dean Road, and a bolt, marking the northern boundary of the Fir Street right-of-way. The survey noted that these markers were located under salvage items on property claimed by appellants. (The 2003 survey was later admitted into evidence during the trial in this case as Exhibit 14, and will hereinafter be referred to as "Exhibit 14.") In summary, the requests for admissions sought appellants' admission or denial with regard to the accuracy of the property boundaries and public rights-of-way identified in Exhibit 14.

Appellants failed to respond to the city's "First Set of Requests for Admissions" within 30 days, as required by Neb. Ct. R. of Discovery 36 (rev. 2000). Appellants later moved for leave to serve responses out of time, and following a hearing, the district court denied appellants' motion.

On June 22, 2004, the consolidated cases came on for a bench trial. The city and appellants offered various evidence. During the trial, the city offered and the court received into evidence a copy of the city's "First Set of Requests for Admissions." The city also introduced into evidence the affidavit of one of the city's attorneys that sets forth the date on which the city served its requests for admissions upon appellants and that also, in effect, noted appellants had failed to provide timely responses to these requests for admissions.

Following the trial, in a file-stamped journal entry dated November 22, 2004, the district court ruled in favor of the city in the declaratory judgment action, declaring the boundaries of appellants' property and the existence of the city's public rights-of-way. Specifically, in its journal entry, the district court stated that "a public right-of-way exists and its legal boundaries are as set forth in Exhibit 14." In its journal entry, the district court "enjoined [appellants] from any use of [the disputed] property inconsistent with its use as a public right-of-way." The journal entry also directed the city to prepare an "injunction," and an

"Order of Permanent Injunction" was subsequently filed on December 6. On November 30, appellants filed their notice of appeal from the November 22 adverse ruling in the declaratory judgment case. The declaratory judgment action is the subject of the present appeal.

In the special assessment case, the trial court ruled in favor of appellants, determining that the cleanup costs could not be charged against appellants as a special assessment, and no appeal was taken by the city in that case.

## ASSIGNMENT OF ERROR

Appellants assign numerous errors, which in summary assert that the district court erred in determining that the city's evidence relating to its claimed public rights-of-way was sufficient to establish the existence and boundaries of the rights-of-way.

## STANDARDS OF REVIEW

An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. *Smith v. City of Papillion*, 270 Neb. 607, 705 N.W.2d 584 (2005). An action for injunction sounds in equity. *Denny Wiekhorst Equip. v. Tri-State Outdoor Media*, 269 Neb. 354, 693 N.W.2d 506 (2005). In reviewing an equity action for a declaratory judgment, an appellate court tries factual issues de novo on the record and reaches a conclusion independent of the findings of the trial court, subject to the rule that when credible evidence is in conflict on material issues of fact, the reviewing court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Gast v. Peters*, 267 Neb. 18, 671 N.W.2d 758 (2003).

## ANALYSIS

*Appellate Jurisdiction Exists.*

In their briefs filed on appeal, the parties note that the Order of Permanent Injunction was entered after the November 30, 2004, notice of appeal that challenged the November 22 ruling. Given the December 6 entry of the Order of Permanent Injunction, the parties question the timeliness of appellants'

notice of appeal and thus challenge this court's appellate jurisdiction. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Johnston v. Nebraska Dept. of Corr. Servs.*, 270 Neb. 987, 709 N.W.2d 321 (2006). We conclude we have appellate jurisdiction.

█ Neb. Rev. Stat. § 25-1301 (Cum. Supp. 2004) controls our analysis and provides:

(1) A judgment is the final determination of the rights of the parties in an action.

(2) Rendition of a judgment is the act of the court, or a judge thereof, in making and signing a written notation of the relief granted or denied in an action.

(3) The entry of a judgment, decree, or final order occurs when the clerk of the court places the file stamp and date upon the judgment, decree, or final order. For purposes of determining the time for appeal, the date stamped on the judgment, decree, or final order shall be the date of entry.

(4) The clerk shall prepare and maintain the records of judgments, decrees, and final orders that are required by statute and rule of the Supreme Court.

For an appellate court to acquire jurisdiction of an appeal, there must be a judgment, decree, or final order entered by the court from which the appeal is timely taken. In the present case, we conclude that the file-stamped November 22, 2004, journal entry is a judgment under § 25-1301 and that the November 30 notice of appeal challenging this judgment constitutes a timely appeal. See Neb. Rev. Stat. § 25-1912(1) (Cum. Supp. 2004) (providing for 30 days to file notice of appeal from district court judgment, decree, or final order).

As noted above, the district court's file-stamped journal entry of November 22, 2004, found in favor of the city, declared the boundaries of the rights-of-way, and enjoined appellants from any use of the disputed property inconsistent with the city's rights-of-way. This ruling resolved all issues raised in the city's declaratory action. Although the November 22 journal entry also directed the city to prepare an injunction, the November 22 ruling nevertheless disposed of the whole merits of the case, and the November 22 file-stamped journal entry was a judgment

from which the November 30 appeal was timely taken. See § 25-1301. Although the Order of Permanent Injunction complicates the jurisdictional analysis, its entry on December 6 does not defeat the finality of the November 22 ruling from which the notice of appeal was explicitly taken and which forms the substance of our consideration on appeal. We take this opportunity to again disapprove of the practice of a trial court's filing of a journal entry that describes an order that is to be entered at a subsequent date. As we stated in *Hosack v. Hosack*, 267 Neb. 934, 940, 678 N.W.2d 746, 752-53 (2004) (quoting *Federal Land Bank v. McElhose*, 222 Neb. 448, 384 N.W.2d 295 (1986)),

> "the confusion presented by this case can be avoided if trial courts will, as they should, limit themselves to entering but one final determination of the rights of the parties in a case." The filing of both a journal entry and a subsequent order creates the potential for confusion. Instead, the trial court should notify the parties of its findings and intentions as to the matter before the court by an appropriate method of communication without filing a journal entry. The trial court may thereby direct the prevailing party to prepare an order subject to approval as to form by the opposing party. See commentary to Canon 3(B)(7) of the Nebraska Code of Judicial Conduct. Only the signed [judgment, decree, or] final order should be filed with the clerk of the court.

In contrast to the journal entry in *Hosack v. Hosack* that left certain matters unresolved, in the instant case, the district court's file-stamped journal entry of November 22, 2004, disposed of all claims and constituted a judgment for purposes of § 25-1301, and the appeal was timely taken. Accordingly, we have jurisdiction to consider this appeal.

*The City's Allegation in Paragraph 3 of Its Complaint Did Not Constitute a Judicial Admission.*

Appellants assert that certain allegations in the city's complaint constitute a judicial admission with regard to the legal description of appellants' property and that the district court erred in entering judgment establishing the existence and boundaries of

the city's claimed public rights-of-way that are inconsistent with the purported admission. Appellants claim that as a result of such admission, the city has waived any controversy with regard to the disputed boundaries. We find no merit to appellants' assertion of a judicial admission on the part of the city.

Appellants focus on paragraph 3 in the city's complaint. In paragraph 3, the city alleged as follows: "[Ashland Salvage] is the owner of record of property generally described as 602 Dennis Dean Road, Ashland, Nebraska ('Property'). The Quit Claim Deed providing the legal description for the Property is attached hereto as Exhibit 'A' and incorporated herein by this reference." Attached to the complaint is a copy of the October 5, 1994, quitclaim deed by which Remmen transferred ownership of the salvage yard property at issue in this case to Ashland Salvage. The deed contains a description of the property that includes portions of the rights-of-way at issue. The deed was recorded. Appellants argue that by including paragraph 3 within its complaint, the city has judicially admitted that appellants are the owners of the disputed property. We do not agree.

This court has recognized that

an admission made in a pleading on which the trial is had is more than an ordinary admission; it is a judicial admission and constitutes a waiver of all controversy so far as the adverse party desires to take advantage of it, and therefore is a limitation of the issues.

(Emphasis omitted.) *Saberzadeh v. Shaw*, 266 Neb. 196, 199, 663 N.W.2d 612, 615 (2003). We have also stated that "[j]udicial admissions must be unequivocal, deliberate, and clear, and not the product of mistake or inadvertence." *U S West Communications v. Taborski*, 253 Neb. 770, 784, 572 N.W.2d 81, 91 (1998). This court has further recognized that an admission "does not extend beyond the intendment of the admission as clearly disclosed by its context." (Emphasis omitted.) *Robison v. Madsen*, 246 Neb. 22, 29, 516 N.W.2d 594, 599 (1994).

We read paragraph 3 of the complaint as merely reciting the historical fact that the quitclaim deed transferred whatever ownership interest Remmen had to Ashland Salvage and that such deed is attached to the complaint as "Exhibit A." Paragraph 3 also recites the historical fact that such quitclaim deed has been

recorded. We do not read paragraph 3 to be an acknowledgment that the text or other description contained in Exhibit A is accurate.

More importantly, the context in which the purported admission occurs makes it readily apparent that the city was not admitting that appellants owned the disputed property. Paragraph 3 is but one paragraph of a seven-paragraph complaint, the thrust of which was that the city disputed appellants' entitlement to certain property that the city claimed as rights-of-way. In paragraph 1 of the complaint, the city states that "[t]his action is being brought pursuant to the Uniform Declaratory Judgments Act . . . requesting the Court to declare the rights and obligations of the parties relating to certain public rights-of-way adjacent to or running through real property owned and/or occupied by [appellants]." Paragraph 5 of the complaint alleges that "[t]he City possesses certain rights and title to streets, roads, alleys and rights-of-way (collectively 'Public Roads and Rights-of-Way') that are adjacent or run directly through the Property." In paragraph 6, the city alleges that "[appellants] have disputed the City's ownership of such Public Roads and Rights-of-Way, and have repeatedly challenged the City as to the lawful placement and location of such Public Roads and Rights-of-Way." Additionally, in paragraph 7, the city alleges that appellants have refused to remove personal property items from the disputed property and that appellants are likely to continue to refuse "until an Order is entered declaring the proper boundaries of the Property and Public Roads and Rights-of-Way and ownership thereto."

Reviewing the allegations contained within paragraph 3 of the complaint in the context in which the allegations occurred, we conclude there is no merit to appellants' argument that the city judicially admitted appellants' ownership of the disputed property. Compare *First Nat. Bank v. Avondale Mills Bevelle Emp.*, 967 F.2d 556 (11th Cir. 1992) (determining under federal notice pleading that motion allegation which was amenable to more than one interpretation did not constitute judicial admission, given remaining allegations in motion). On the contrary, paragraph 3, along with the remaining allegations in the complaint, combine to put the boundaries of appellants' property at issue, and paragraph 3 did not constitute a judicial admission.

*Appellants Have Admitted the Essential Facts Relative to the Allegations in the City's Complaint, and the Evidence Is Sufficient to Support the Trial Court's Decision Declaring the City's Entitlement to the Rights-of-Way and Enjoining Appellants Relative Thereto.*

As noted above, during the discovery phase of these proceedings, the city served certain requests for admissions upon appellants that appellants failed to answer. The requests pertained to the boundaries of the disputed property, and the requests were admitted into evidence at trial.

On appeal, appellants challenge the sufficiency of the evidence. In its brief in response, the city argues that appellants' failure to answer the requests for admissions resulted in admitted facts that, along with other evidence, are sufficient to support the district court's decision in this case. We agree with the city.

We have held that a party's failure to make a timely and appropriate response to a request for admission constitutes an admission of the subject matter of the request, which matter is conclusively established unless, on motion, the court permits withdrawal of the admission. *Schwarz v. Platte Valley Exterminating*, 258 Neb. 841, 606 N.W.2d 85 (2000); *Wibbels v. Unick*, 229 Neb. 184, 426 N.W.2d 244 (1988). We have recognized that rule 36 is self-enforcing, without the necessity of judicial action to effect an admission which results from a party's failure to answer or object to a request for admission. *Id.*; *Mason State Bank v. Sekutera*, 236 Neb. 361, 461 N.W.2d 517 (1990). We have noted, however, that rule 36 is not self-executing. Thus, a party that seeks to claim another party's admission, as a result of that party's failure to respond properly to a request for admission, must prove service of the request for admission and the served party's failure to answer or object to the request and must also offer the request for admission as evidence. *Schwarz v. Platte Valley Exterminating, supra*; *Wibbels v. Unick, supra.* If the necessary foundational requirements are met and no motion is sustained to withdraw an admission, a trial court is obligated to give effect to the provisions of rule 36. *Schwarz v. Platte Valley Exterminating, supra.* The city followed the indicated procedures in this case.

The record reflects that the city's "First Set of Requests for Admissions" to appellants was served on April 12, 2004, and that appellants failed to respond within the time period specified in rule 36. Appellants' failure to make a timely and appropriate response to the requests for admissions constituted an admission of the subject matter of the requests. See *Schwarz v. Platte Valley Exterminating, supra.* Appellants sought leave to withdraw their admissions or file responses; but the district court denied their motion, and appellants make no assignment of error relative to this ruling.

The record reflects that at trial, the city offered into evidence a copy of the requests for admissions and also offered evidence of service of the requests upon appellants and appellants' failure to respond. This evidence was received. Accordingly, the city is entitled to claim appellants' admission of the requests included within the "First Set of Requests for Admissions" as a result of appellants' failure to respond to those requests. See *id.*

Given the content of the requests for admissions, appellants admitted, inter alia, that Exhibit 14 accurately describes the boundary lines for appellants' property and accurately describes the boundary lines for Fir Street and Dennis Dean Road. Other evidence in the record showed that the rights-of-way claimed by the city had been acquired by the city in 1871. This evidence and the admissions resolved the facts in controversy in the city's declaratory judgment case. Relying in part upon Exhibit 14, the accuracy of which was admitted by appellants, the district court declared the existence of the Fir Street and Dennis Dean Road rights-of-way as they abutted the southeast corner of appellants' property, declared the boundaries of appellants' property and those of the city's rights-of-way, and enjoined appellants from any inappropriate use of the rights-of-way. We have reviewed the record de novo, see *Gast v. Peters,* 267 Neb. 18, 671 N.W.2d 758 (2003), and we determine the district court did not err in entering judgment in favor of the city on the evidence before it. The district court's decision is affirmed.

## CONCLUSION

For the reasons stated above, we affirm the district court's decision declaring the existence and boundaries of the city's

public rights-of-way at issue in this case and enjoining appellants from any use inconsistent with the city's rights-of-way.

AFFIRMED.

WRIGHT, J., not participating.